JKMcD: 2021R00418

# SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. ELH-21-470 |
| | * | |
| NICHELLE HENSON, | * | (False Statements, 18 U.S.C. § 1001; |
| | * | Bank Fraud, 18 U.S.C. § 1344; |
| Defendant. | | Forfeiture) |

*******

## INDICTMENT

### Background

The Grand Jury for the District of Maryland charges that:

At all times material to the Indictment:

1.     Defendant **NICHELLE HENSON ("HENSON")** was first a resident of Baltimore, Maryland and then a resident of Baltimore County, Maryland.

2.     **HENSON** incorporated a number of businesses with the State of Maryland, including Crowns Construction, LLC; Nichelle Henson Campaign, LLC; One Stop for Services, LLC; Your Friendly Tax Preparation Services, LLC; Women Entrepreneurs Can Succeed, LLC, and Peace of Mind Services Inc.  **HENSON** often opened bank accounts in the names of businesses she incorporated and obtained Tax Identification Numbers (TINs) from the IRS for the businesses.

3.   If any of **HENSON**'s businesses had employees, **HENSON** was required to withhold taxes from their employees' paychecks, including federal income taxes, Medicare and social security taxes (often referred to as Federal Insurance Contribution Act or "FICA" taxes) (collectively "employment taxes").

4.      If any of **HENSON**'s businesses had employees, **HENSON** was required to make deposits of the employment taxes to the Internal Revenue Service on a quarterly basis and was required to file, following the end of each calendar quarter, an Employer's Quarterly Federal Income Tax Return (Form 941), setting forth the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of social security and Medicare taxes due, and the total tax deposits.

5.      If any of **HENSON**'s businesses had employees, at the end of calendar year 2019, **HENSON** was required to provide the employee with a Form W-2 Statement of Earnings or a Form 1099 for independent contractors and to file with the IRS Forms 1099 and Form W-3 setting forth the employees and wages paid for 2019.

6.      For tax year 2019, **HENSON** did not file with the IRS any Forms 941, 1099, W-3, or W-2 for any employees of Crowns Construction, LLC; Nichelle Henson Campaign, LLC; Your Friendly Tax Preparation Services, LLC; and Peace of Mind Services, Inc. **HENSON** filed one Form 941 for the First Quarter of 2019 with the IRS for Women Entrepreneurs Can Succeed LLC, which reflected zero employees, but no other tax forms. For tax year 2019, **HENSON** filed with the IRS two W-2 tax forms and one 1099 tax form for One Stop For Services LLC but no Forms 940 and 941.

7.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by supporting the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

8.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in and around March 2020, which was designed to provide emergency financial assistance to American suffering from the economic effects caused by the COVID-19 pandemic. Two sources of relief provided by the CARES Act were the authorization of forgivable loans to small businesses for job retention and certain other expenses, through programs referred to as the Paycheck Protection Program ("PPP") and the expansion of the Disaster Loan Program to include pandemic related economic injury through COVID-19 Economic Injury Disaster Loans ("EIDL").

### EIDL Loans

9.      In order to obtain an EIDL, a small business submitted an electronic EIDL application (SBA Form 5) directly to SBA via its website, covid19relief.sba.gov. The EIDL application was certified by an authorized representative of the business.  The EIDL application required the business, through its authorized representative, to acknowledge the program rules and to make certain certifications in order to be eligible for the EIDL loan.

10.     The authorized representative of the small business certified eligibility information. Further, the authorized representative submitted Combined Annual Operating Expenses for the 12 months prior to January 31, 2020 as well as Gross Revenues and Costs of Goods Sold for that same period. Loans were calculated based on 6 months of Gross Revenues minus Cost of Goods Sold. Applicants could also receive a Disaster Loan Emergency Advance Grant up to $10,000 calculated as a $1,000 grant per employee up to a maximum of $10,000.

11.     An EIDL application was processed by the SBA.  If an EIDL application was approved, the SBA directly funded the loan through a deposit to a bank account of the business borrower.

3

12.     EIDL proceeds were required to be used by the business on certain permissible expenses—fixed debts including rent and utilities, payroll, accounts payable and other bills resulting from the pandemic. The EIDL program lent the money at a fixed annual percentage rate.

## THE CHARGES

13.     On or about the dates set for the below, in the District of Maryland, the Defendant

## NICHELLE HENSON

in a matter within the jurisdiction of the Small Business Administration made materially false, fictitious, and fraudulent statements and representations in connection with EIDL electronic loan applications made through the SBA's covid19relief.sba.gov website as detailed below:

| COUNT | DATE of EIDL APPLICATION | DESCRIPTION OF FALSITY | FUNDS OBTAINED |
|---|---|---|---|
| 1 | April 14, 2020 | **HENSON** submitted the application for **Your Friendly Tax Preparation Services, LLC,** that falsely claimed 10 employees, 2019 Gross Revenue of $36,000, Cost of Goods Sold of $13,000. | $10,000 Grant Deposited to Acc't 1646 at SunTrust Bank |
| 2 | June 19, 2020 | **HENSON** submitted the application for **One Stop for Services LLC**, that falsely claimed 8 employees, 2019 Gross Revenue of $762,540, Cost of Goods Sold of $204,981. | $8,000 Grant Deposited to Acct 5611 in the name of Nichelle Henson Campaign LLC at People's Bank |
| 3 | June 19, 2020 | **HENSON** submitted the application for **Nichelle Henson Campaign LLC**, that falsely claimed 5 employees, 2019 Gross Revenue of $480,000, Cost of Goods Sold of $70,080. | Advance and Loan Declined |

4

| COUNT | DATE of EIDL APPLICATION | DESCRIPTION OF FALSITY | FUNDS OBTAINED |
|---|---|---|---|
| 4 | June 19, 2020 | **HENSON** submitted the application for **Peace of Mind Services Inc**, that falsely claimed 12 employees, 2019 Gross Revenue of $1,375,409, Cost of Goods Sold of $475,962. | Advance and Loan Declined |
| 5 | April 7, 2021 | **HENSON** submitted an Application for **Nichelle Henson Campaign LLC**, that falsely claimed 11 employees, 2020 Gross Revenue of $800,000, Cost of Goods Sold of $500,000 | Advance and Loan Declined |
| 6 | April 7, 2021 | **HENSON** submitted an Application for **Your Friendly Tax Preparation Services LLC**, that falsely claimed 14 employees, 2020 Gross Revenue of $700,000, Cost of Goods Sold of $400,000 | Advance and Loan Declined |

18 U.S.C. § 1001(a)

## COUNTS 7 – 12

The Grand Jury for the District of Maryland further charges:

## PPP LOANS

1.      Paragraphs 1 – 8 of Counts 1-6 are incorporated here.

2.      In order to obtain a PPP loan, a small business submitted a PPP loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and to make certain certifications in order to be eligible for the PPP loan.

3.      The small business, through its authorized representative, made the PPP loan application on SBA Form 2483 to an authorized lender, such as an FDIC-insured bank. Some PPP loan applications were received by on-line processors such as Kabbage, Inc., and Blue Vine, and were then sent to the FDIC insured bank.

4.      The authorized representative of the small business on SBA Form 2483 provided information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner. The average monthly payroll expenses and the number of employees were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses including copies of forms they had filed for tax year 2019 with the IRS.

5.      If a PPP loan application was approved, the lending financial institution funded the PPP loan using its own monies through a deposit to the bank account of the borrower.  Although the participating lender made the PPP loan, the loan was 100% guaranteed by the SBA.  Data from

the loan application, including information about the borrower, the total amount of the loan and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

6.     The applying small business was required by the PPP to be in operation prior to February 15, 2020, and the applicant was required to certify this fact to the lender and SBA. The authorized representative of the small business was also required to disclose what, if any, other businesses they owned or controlled.

7.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, rent for the business premises, or interest on mortgages on the business premises, utilities for the business, and worker protection costs related to COVID-19. The PPP loan program allowed the interest and principal on the PPP loan to be forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

## The Scheme to Defraud

8.     Beginning in and around April 2020 and continuing through in and around July 2021, in the District of Maryland and elsewhere, the defendant,

**NICHELLE HENSON,**

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud financial institutions, namely Celtic Bank and Cross River Bank, and to obtain moneys, funds and property owned by and under the custody and control of the financial institutions by means of materially false and fraudulent pretenses, representations, and promises.

7

## The Object of the Scheme to Defraud

9.     It was the object of the scheme to defraud for **HENSON** to personally enrich herself by fraudulently obtaining PPP loans and spending the funds for purposes not permitted under the PPP loan program including payments for **HENSON's** personal plastic surgery, renovations to a relative's home, renovations to **HENSON's** personal living spaces, car payments, and other unauthorized expenditures.

## Manner and Means of the Scheme to Defraud

10.     It was part of the scheme to defraud that **HENSON** submitted applications for loans under the PPP program that contained false statements, misrepresentations and omissions related to her purported businesses including their existence, address, payroll expense, and number of employees.

11.     It was further a part of the scheme to defraud that **HENSON** falsely attested on the PPP loan applications that the information presented was true and accurate.

12.     It was further a part of the scheme to defraud that **HENSON** provided bank account numbers into which PPP loan proceeds were deposited; some of the bank accounts were personal, opened in the names of other businesses which did not apply for PPP loans, or were opened expressly in time to receive the PPP loan proceeds.

13.     It was a further part of the scheme to defraud that **HENSON** failed to disclose on her application other businesses which she had incorporated and/or other businesses for which she had submitted PPP loan applications.

14.     It was a further part of the scheme to defraud that **HENSON** falsely promised to spend PPP funds on allowable expenses such as payroll, business rent and business utilities when

8

she intended to spend the funds on personal expenses such as personal plastic surgery, home renovations for herself and relatives, rent and utilities for personal residences, and family expenses.

15.     It was a further part of the scheme to defraud that **HENSON** submitted fictitious tax forms to financial institutions which **HENSON** had never filed with the IRS.

## THE CHARGES

16.     On or about the dates set forth below, in the District of Maryland, the Defendant

## NICHELLE HENSON

executed the scheme and artifice to defraud financial institutions and made false and fraudulent misrepresentations and promises to the financial institutions as detailed below:

| COUNT | DATE of LOAN APPLICATION | DESCRIPTION OF BANK FRAUD | LOAN FUNDS OBTAINED |
|---|---|---|---|
| 7 | April 30, 2020 | **HENSON** submitted an SBA PPP Borrower Application to Celtic Bank for **Your Friendly Tax Preparation Services, LLC,** that falsely claimed 14 employees, an average monthly payroll of $53,583.33 and was supported by a fraudulent 2019 IRS Form W-3 (never filed with the IRS) which falsely showed 14 employees and total wages paid in 2019 of $643,000 | **$133,957** |
| 8 | May 10, 2020 | **HENSON** submitted an SBA PPP Borrower Application to Cross River Bank for **Nichelle Henson Campaign LLC,** that falsely claimed 10 employees, an average monthly payroll of $50,000 and was supported by a fraudulent 2019 IRS Form W-3 (never filed with the IRS) which falsely showed 10 employees and total wages paid in 2019 of $600,000 | **$125,000** |

| COUNT | DATE of LOAN APPLICATION | DESCRIPTION OF BANK FRAUD | LOAN FUNDS OBTAINED |
|---|---|---|---|
| 9 | May 14, 2020 | **HENSON** submitted an SBA PPP Borrower Application to Cross River Bank for **One Stop for Services LLC**, that falsely claimed 5 employees, an average monthly payroll of $48,000, and was supported by a fraudulent 2019 IRS Form W-3 (never filed with the IRS) which falsely showed 5 employees and total wages paid in 2019 of $480,000 | $120,000 |
| 10 | June 20, 2020 | **HENSON** submitted an SBA PPP Borrower Application to Cross River Bank for **Peace of Mind Services Inc.** that falsely claimed 12 employees, an average monthly payroll of $73,084, and was supported by a fraudulent 2019 IRS Form W-3 (never filed with the IRS) which falsely showed 12 employees and total wages paid in 2019 of $864,970 | $182,709 |
| 11 | June 23, 2020 | **HENSON** submitted an SBA PPP Borrower Application Form to Cross River Bank for **Women Entrepreneurs Can Succeed, LLC**, that falsely claimed 11 employees and an average monthly payroll of $90,411 and was supported by a fraudulent 2019 IRS Form W-3 (never filed with the IRS) which falsely showed 11 employees and $997,265 paid in total wages for 2019 | $226,027 |
| 12 | June 29, 2020 | **HENSON** submitted an SBA PPP Borrower Application to Cross River Bank for **Crowns Construction, LLC**, that falsely claimed 12 employees and an average monthly payroll of $84,359 and was supported by a fraudulent 2019 IRS Form W-3 (never filed with the IRS) which falsely showed 12 employees and $992,461 paid in wages for 2019 | $210,897 |

18 U.S.C. § 1344

## COUNTS 13 - 18

The Grand Jury for the District of Maryland further charges:

1.      Paragraph 1 – 15 of Counts 7-12 are incorporated here.

### Second Draw PPPs

2.      The Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act (Economic Aid Act), which was part of the Consolidated Appropriations Act, 2021 package, extended the Paycheck Protection Program (PPP) to include a second round of funding to certain businesses that received funding under the original PPP.  These are referred to as "Second Draw PPP Loans."

3.      In order to obtain a Second Draw PPP loan, a small business was required to have previously received a First Draw PPP loan, used the full loan amount for authorized uses before the Second Draw PPP loan was disbursed, demonstrated at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020, and submitted a PPP Second Draw loan application, which was signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and to make certain certifications in order to be eligible for the PPP loan.

4.      The small business, through its authorized representative, made the PPP Second Draw loan application on SBA Form 2483-SD to an authorized lender, such as an FDIC-insured bank, or to a loan processor, which in turn provided the application to the financial institution.

5.      The authorized representative of the small business on SBA Form 2483-SD provided information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner. The average monthly payroll expenses and the

11

number of employees were used to calculate the amount of money the small business was eligible

to receive under the PPP. In addition, businesses applying for a PPP Second Draw loan were

required to provide documentation confirming their payroll expenses including copies of forms

they had filed for tax year 2020 with the IRS.

6.      A PPP Second Draw loan application was processed by a participating lender. If a

PPP loan application was approved, the lender funded the PPP Second Draw loan using its own

monies through a deposit to a bank account of the borrower. While it was the participating lender

that issued the PPP Second Draw loan, the loan was 100% guaranteed by the SBA. Data from the

loan application, including information about the borrower, the total amount of the loan and the

listed number of employees, the reduction in gross receipts, was transmitted by the lender to the

SBA in the course of processing the loan.

7.      The applying small business was required by the PPP to be in operation prior to

February 15, 2020, and the applicant was required to certify this fact to the lender and SBA. The

authorized representative of the small business was also required to disclose what, if any, other

businesses they owned or controlled.

8.      PPP loan proceeds were required to be used by the business on certain permissible

expenses—payroll costs, rent for the business premises, or interest on mortgages on the business

premises, utilities for the business, and worker protection costs related to COVID-19. The PPP

Second Draw loan program allowed the interest and principal on the PPP loan to be forgiven if

the business spent the loan proceeds on these expense items within a designated period of time

and used a defined portion of the PPP loan proceeds on payroll expenses.

## THE CHARGES

9.      On or about the dates set forth below, in the District of Maryland, the Defendant

### NICHELLE HENSON

executed the scheme and artifice to defraud financial institutions and made false and fraudulent

misrepresentations and promises to the financial institutions as detailed below:

| COUNT | DATE of LOAN APPLICATION | DESCRIPTION OF BANK FRAUD | LOAN FUNDS OBTAINED |
|---|---|---|---|
| 13 | January 19, 2021 | **HENSON** submitted an SBA PPP Second Draw Borrower Application to M&T Bank for **Your Friendly Tax Preparation Services, LLC,** that falsely claimed 14 employees and an average monthly payroll of $53,500, a reduction in Gross Receipts of $40,749 and was supported by a fraudulent 2020 IRS Form 940 (never filed with the IRS) that falsely showed total wages paid in 2020 of $642,000. | **$133,750** |
| 14 | January 19, 2021 | **HENSON** submitted an SBA PPP Second Draw Borrower Application Form to M&T Bank to M&T Bank for **Nichelle Henson Campaign LLC**, that falsely claimed 10 employees and an average monthly payroll of $50,000 and was supported by fraudulent 2020 IRS Forms 940 and 941 (never filed with the IRS) which falsely showed 10 employees and total wages paid in 2020 of $600,000. | **$125,000** |
| 15 | January 19, 2021 | **HENSON** submitted an SBA PPP Second Draw Borrower Application Form for **One Stop for Services LLC** to M&T Bank that falsely claimed 10 employees, an average monthly payroll of $48,000, a reduction in Gross Receipts of $42,750 and was supported by fraudulent 2020 IRS Forms 940 and 941 (never filed with the IRS) which falsely showed 10 employees and total wages paid in 2020 of $576,000. | **$120,000** |

| COUNT | DATE of LOAN APPLICATION | DESCRIPTION OF BANK FRAUD | LOAN FUNDS OBTAINED |
|---|---|---|---|
| 16 | January 19, 2021 | **HENSON** submitted an SBA PPP Second Draw Borrower Application Form to M&T Bank for **Peace of Mind Services Inc.** that falsely claimed 12 employees, an average monthly payroll of $59,000, & was supported by fraudulent 2020 IRS Forms 940 and 941 (never filed with the IRS) which falsely showed 12 employees and total wages paid in 2020 of $696,000. | $147,500 |
| 17 | January 19, 2021 | **HENSON** submitted an SBA PPP Second Draw Borrower Application Form to M&T Bank for **Women Entrepreneurs Can Succeed, LLC**, that falsely claimed 11 employees, an average monthly payroll of $60,000, a reduction in Gross Receipts of $50,000, & was supported by fraudulent 2020 IRS Forms 940 and 941 (never filed with the IRS) which falsely showed 11 employees and total wages paid in 2020 of $720,000. | $150,000 |
| 18 | January 19, 2021 | **HENSON** submitted an SBA PPP Second Draw Borrower Application Form to M&T Bank for **Crowns Construction LLC**, that falsely claimed 12 employees, an average monthly payroll of $57,000, a reduction in Gross Receipts of $78,077 & was supported by fraudulent 2020 IRS Forms 940 and 941 (never filed with the IRS) which falsely showed 12 employees and total wages paid in 2020 of $684,000. | $142,500 |

18 U.S.C. § 1344

14

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.      Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982, 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), as a result of the defendant's conviction under any of the offenses in Counts Seven through Eighteen of this Indictment.

2.      Pursuant to 18 U.S.C. § 982(a)(2)(A), upon conviction of any of the offenses set forth in Counts Seven through Eighteen of this Indictment, the defendant,

### NICHELLE HENSON

shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the scheme to defraud.

3.      The property to be forfeited includes, but is not limited to, the following:

   a.  $145,044.00 in funds seized from M&T Bank Account x0657 in the name of Women Entrepreneurs Can Succeed, LLC;

   b.  $142,544.00 in funds seized from M&T Bank Account x0665 in the name of Peace of Mind Services, LLC;

   c.  $127,114.71 in funds seized from M&T Bank Account x0749 in the name of Your Friendly Tax Preparations, LLC

   d.  $114,534.01 in funds seized from M&T Bank Account x0756 in the name of One Stop for Services LLC

   e.  $120,044.00 in funds from M&T Bank Account x0780 in the name of Nichelle Henson Campaign, LLC

   f.  $28,793.10 in funds seized from M&T Bank Account x1424 in the name of Incredible Solutions Group Inc. d/b/a Incredible Solutions

   g.  a money judgment in the total amount of proceeds the defendant obtained as the result of the scheme to defraud.

15

**Substitute Assets**

4.     If any of the property described above, as a result of any act or omission of the

defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided

        without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C.

§ 853(p), as incorporated by 18 U.S.C. § 982(b) and 28 U.S.C. § 2461(c).

18 U.S.C. § 982(a)(2)(A) & (b)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)
Fed. R. Crim. P. 32.2(a)

*Erek L. Barron /jlkmcd*
Erek L. Barron
United States Attorney

A TRUE BILL

SIGNATURE REDACTED

Foreperson

Date: **12/7/2021**

16